WILLIAM JOSHUA LEONARD *v.* STATE OF
MARYLAND

[No. 44, September Term, 1980.]

*Decided October 10, 1980.*

The cause was argued before MOORE, LOWE and WILNER, JJ.

*Joseph H. Rouse, Assigned Public Defender,* for appellant.

*Maureen O'Ferrall, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, Warren B. Duckett, Jr., State's Attorney for Anne Arundel County,* and *Stephen R. Beard, Assistant State's Attorney for Anne Arundel County,* on the brief, for appellee.

WILNER, J., delivered the opinion of the Court.

Appellant was charged in a twelve-count indictment with armed robbery and various related offenses, all arising out of the robbery of a Texaco service station on February 12, 1979. After a jury trial in the Circuit Court for Anne Arundel County, he was convicted on seven of the twelve counts and, after merging two of the seven, the court sentenced him on the remaining five counts for a total of thirteen years.

Brenda Bates, the manager of the station on duty at the time of the robbery, testified that appellant walked into the station office on the day in question, engaged her in conversation for some twenty minutes, and then demanded money. In the absence of a response from Ms. Bates, appellant reached across the counter and attempted to pull out the cash drawer. Ms. Bates slammed the drawer shut, whereupon appellant pulled a gun and fired at her. Fortunately, she was not hit, although it appears that either the bullet or the gaseous discharge grazed her neck, leaving a bruise. Appellant then fled, taking with him $5.00 that had been in the cash drawer.

Ms. Bates identified appellant in court as her assailant

and also identified a tan jacket that she said he was wearing at the time of the robbery. Gary Lee Jones, a friend of appellant, said that later that afternoon (of the 12th) he saw appellant wearing the same tan jacket. Appellant was upset and asked Jones if he could exchange his tan jacket for a maroon jacket owned by Jones. The next evening, February 13, Detective Beans, of the Annapolis police department, returned Jones' maroon coat and retrieved appellant's tan jacket. Beans testified that he found the maroon coat in appellant's car when he arrested appellant on the 13th.

There was a good bit of other evidence connecting appellant to the incident at the Texaco station, but, for the purpose of considering the issues necessary to be discussed in this appeal, what has heretofore been recited will largely suffice.

(1) "Was the Trial Judge incorrect in his ruling on July 17, 1979 in refusing to dismiss the indictment against the Appellant since he had not been tried within one hundred twenty days as mandated by Rule 746 of the Maryland Rules of Procedure?"

Maryland Rule 746 a, as it read in June, 1979, provided that "[w]ithin 30 days after the earlier of the appearance of counsel or the first appearance of the defendant before the court pursuant to Rule 723 . . ., a trial date shall be set which shall be not later than 120 days after the appearance or waiver of counsel or after the appearance of defendant before the court pursuant to Rule 723. . . ." On June 25, 1979, the Court of Appeals filed an Opinion in *State v. Hicks,* 285 Md. 310 (1979), in which it concluded that (1) the requirement that a case be brought to trial within 120 days, absent a postponement "for extraordinary cause shown," was mandatory and not directory, and (2) the sanction for its violation was dismissal of the charges lodged against the defendant. *See* 285 Md. at 318.[1]

---

1. The rule has since been amended to allow 180 days rather than 120. Moreover, by Laws of Maryland, 1980, ch. 378, effective July 1, 1980, the standard for permissible continuance is "good cause shown" rather than "extraordinary cause shown."

Appellant, as noted, had been arrested on February 13, 1979. He was indicted on February 26, and arraigned on March 12, at which time the public defender entered his appearance. On July 17, 1979, the morning of trial, appellant moved to dismiss the indictment on the ground that he had not been brought to trial within 120 days, as then required by Rule 746 a. The court found as a fact that trial had been scheduled within the 120-day period, that the State was prepared to go ahead at that time — June 12, 1979, that defense counsel had requested and obtained a postponement, and that the 120-day period had elapsed because of that postponement. Accordingly, the court concluded that appellant had waived the benefit of the rule.

The simple answer to appellant's first contention is that the sanction of mandatory dismissal, which emanates solely from *Hicks,* is not applicable to this proceeding. As the Court of Appeals subsequently concluded, 285 Md. at 334, 338, the mandatory sanction of dismissal applies "only to future criminal prosecutions and only to those pending cases where, as of our mandate in this case, there have been no appearances of counsel or first appearances of defendants pursuant to Rule 723." The Court's mandate in *Hicks* issued on July 25, 1979; that is the effective date of the *Hicks* interpretation of Rule 746.

Whether the court was correct or incorrect in its conclusions as to waiver, the fact is that appellant was not entitled to a dismissal of the indictment because of the failure to bring the case to trial within 120 days. We therefore find no error in the refusal of the court to dismiss the indictment by reason of the violation of Rule 746 alleged in this case.

(2) "Was the Appellant denied the right of confrontation by the Trial Judge when his counsel was refused the right to see the victim's written statement after she had admitted on cross examination of giving one and as a consequence was then not able to cross examine her from it?"

During the cross-examination of Ms. Bates, this colloquy occurred:

"Q  Now, you've testified with regard to this case, after you were — after the police came, did at any time you give a written statement to the police?

A  Just that night after it happened.

Q  You gave a written statement that you signed?

A  Well, they wrote it and I signed it.

MR. ROUSE [Defense Counsel]: May I have a copy of that?

MR. BEARD [State's Attorney]: May we approach the Bench, Your Honor?

COURT: Yes.

(BENCH CONFERENCE OUT OF HEARING OF JURY)

MR. BEARD: Your Honor, this is the first time Mr. Rouse has formally asked me for this document and he's conducting what I think to be a fishing expedition. If he's got a prior inconsistent statement in mind, he's certainly not laying a foundation for it. He's just grabbing at straws, and this is not how one approaches a properly admitted prior inconsistent statement.

MR. ROUSE:  I understand in the case law, Your Honor, that once the witness has testified I am entitled to any prior statement she might have given to the police in regard to the case.

COURT: If it's exculpatory.

MR. ROUSE: Well, Your Honor, I have never seen the statement. I don't know.

COURT: Well, you —

MR. ROUSE: I might point out to his Honor that Mr. Beard has previously approached the Bench and said to Your Honor, during the course of the discussion about the jacket, that the woman said in

his office that that was the jacket, and she's denied that on the stand, and that's certainly exculpatory.

MR. BEARD: She said it was in my office, that Detective Harrington showed her the jacket.

COURT: Yes, nothing — nothing inconsistent about what she said and what Mr. Beard said.

MR. ROUSE: She never said she identified it in the office.

COURT: Well, she said she —

MR. ROUSE: So, in any event, I am requesting his Honor to order the State's Attorney to give me a copy of the lady's statement she — written statement she gave with regard to this case to the police right after —

COURT: No, I'm not going to do that. It [sic] it's anything in there that's exculpatory, you are entitled to see it. If it's not — I'll read it if you want me to.

MR. ROUSE: Do you want us to stay up here while you're reading the statement?

COURT: No.

(END OF BENCH CONFERENCE)

MR. ROUSE: May we approach the Bench again, Your Honor?

COURT: Yes.

(BENCH CONFERENCE OUT OF HEARING OF JURY)

MR. ROUSE: I assume then you're going to deny me the right to look at that statement?

COURT: The Court's read the statement and finds no exculpatory material in it. All right?

MR. ROUSE: Well, Your Honor, just for the record, that it is not my understanding that even though there is nothing exculpatory, there may be something in the statement that could be very well inconsistent with what she's saying now, and under those cases that say that if I'm entitled to her

statement, I would so ask for it, whether it's exculpatory or not is not the point. It's whether it would make a prior inconsistent statement so that we have the opportunity to cross-examine her from that.

COURT: All right.

MR. ROUSE: You're denying it?

COURT: Yes.

(END OF BENCH CONFERENCE)

MR. ROUSE: Just so the record's clear, would you mark that as part of the file, Your Honor?

COURT: I'll see that it gets in the record."

Relying on *Carr v. State,* 284 Md. 455 (1979), appellant contends that the court erred in not permitting counsel to inspect the statement given by Ms. Bates to the police. He argues that the appropriate test is not whether the statement was exculpatory, as suggested by the court, but rather whether it was in any way inconsistent with Ms. Bates' testimony and thus might have value for purposes of cross-examination.

Two distinct questions are raised: one, did the court apply the correct standard in deciding to withhold the statement, and two, did it utilize the correct procedure in making that decision. The answer to both is "no."

*Carr* makes clear beyond question that a defendant's right, at trial, to inspect the prior statement of a State's witness who has testified is not necessarily limited (1) by the rules pertaining to pretrial discovery, or (2) to statements that are merely exculpatory. When confronted with the actual testimony of a critical witness and the knowledge that the witness has given a prior statement bearing on a material issue in the case, counsel is not engaged in a mere "fishing expedition" in seeking access to the prior statement. At that point, it becomes more than a matter of casting a seine over the State's files to see what turns up, but of directly confronting the witness; and the statement thus assumes a specific importance and relevance beyond its gen-

eral value for trial preparation. *See Carr,* 284 Md. at 472. The test clearly is whether the statement is, or may be, inconsistent with the witness' trial testimony, and thus usable in cross-examination. To the extent that the court judged, or appeared to judge, the issue exclusively in terms of whether the statement was exculpatory, it was plainly in error.

Even if, as the State suggests, the court tacitly considered the question of inconsistency as well, we believe that it nevertheless erred in denying counsel's request to inspect the statement. Although, in *Carr,* the Court did not adopt wholesale the discovery rules initially laid down for the Federal courts in *Jencks v. United States,* 353 U.S. 657 (1957),[2] it did, at pp. 460-61 of 284 Md., quote with apparent approval this passage from the *Jencks* Opinion, which, we feel, states but a truism in any event:

> "Every experienced trial judge and trial lawyer knows the value for impeaching purposes of statements of the witness recording the events before time dulls treacherous memory. *Flat contradiction between the witness' testimony and the version of the events given in his reports is not the only test of inconsistency.* The omission from the report of facts related at the trial, or a contrast in emphasis upon the same facts, even a different order of treatment, are also relevant to the cross-examining process of testing the credibility of a witness' trial testimony." (Emphasis supplied.)

These more subtle aspects of potential inconsistency, intrinsically subjective, have to be viewed from the defendant's perspective, and can be properly weighed only by defense counsel (with the assistance of his client). A screening of the statement by the court cannot suffice as an effective substitute. The court cannot be expected to view in the same context as defense counsel these more latent and

---

2. *See Yuen v. State,* 43 Md. App. 109, 116 (1979), *cert. den.* 286 Md. 756 (Sept. 10, 1979), *cert. den.* 444 U.S. 1076.

subtle gaps or differences; nor should it purport to do so. It is for that reason as well that the court erred. If any weight is to be given to the aforequoted considerations, as we think the Court of Appeals intended, it is incumbent upon the court, under the circumstances evident here, to permit counsel to inspect the statement and determine for himself whether it is or is not usable for cross-examination. The court still retains, of course, the ultimate right to determine whether the statement, or any part of it, is admissible in evidence, either as a document or through questions propounded to the witness. The issue here is not admissibility but inspection for possible use in cross-examination.

The statement in question was subsequently included in the record, as the court promised. We have reviewed it and, although it is *generally* consistent with Ms. Bates' testimony, we cannot conclude that, when judged against the principles noted in *Jencks,* it is entirely so, to the point of making the court's error harmless beyond a reasonable doubt.[3]

In light of this conclusion, it is necessary that the convictions be reversed. It therefore becomes unnecessary to address the remaining issues raised by appellant, none of

---

**3.** This case illustrates well and precisely the importance of the considerations mentioned in *Jencks.*

In her statement to the police, Ms. Bates related the incident as follows: "As he entered the gas station I was putting up the cigarettes behind the counter. The suspect approached me and asked me 'Do you need any help? I told him no because I just had hired someone lately. The suspect then stated Do you own the place'? I told him No that I am just the manager. The suspect then said give me your money.' I said No.' The suspect stated that you better give me all your money.' I said that I did not have any.' The suspect said I know you have money in the middle drawer and reached over the counter and stuck his finger into the middle drawer."

It would appear from this recitation that the confrontation was a rather quick one. Yet, in her trial testimony, Ms. Bates said that she and appellant were engaged in conversation for 15 or 20 minutes, and that "fact" was stressed by the prosecutor in arguing the reliability of her identification of appellant.

Similarly, in her police statement, Ms. Bates described the gun as "a dark colored revolver about two inch barrel," but she stated at trial that she didn't see the gun and was unable to describe it.

640

which concern the sufficiency of the evidence to sustain the convictions.

> *Judgments reversed; case remanded to Circuit Court for Anne Arundel County for new trial; costs shall not be reallocated, pursuant to Maryland Rule 1082 f.*