913 A.2d 647

**William Thomas JOHNSON**

v.

**STATE of Maryland.**

**No. 2130, Sept. Term, 2005.**

Court of Special Appeals of Maryland.

Dec. 26, 2006.

**128**

Martin J. Burke, III (Seigel, Tully & Furrer, on brief), Baltimore, for appellant.

Steven L. Holcomb (J. Joseph Curran, Jr., Atty. Gen., on brief), for appellee.

Panel MURPHY, C.J., PAUL E. ALPERT, (Ret., specially assigned), JAMES S. GETTY, (Ret., specially assigned), JJ.

ALPERT, J.

William Thomas Johnson, the appellant, was convicted in the Circuit Court for Baltimore County, after pleading not guilty on an agreed statement of facts, of possession of cocaine with intent to distribute. The court sentenced Johnson to 25 years imprisonment without possibility of parole, and Johnson filed this appeal.

## ISSUE

Johnson argues, in essence, that the trial court erred by refusing to compel the State to permit the defense to inspect, in connection with the preparation of a motion to suppress evidence, a search and seizure warrant that was issued for the residence, car, and person of an unnamed individual who implicated Johnson in the case, where that warrant was mentioned in a search and seizure warrant for Johnson's residence, car, and person.[1] We find no merit in this argument and affirm the judgment of the trial court.

## FACTS

The trial proceedings have not been transcribed and made a part of the record on appeal. The parties rely on the facts set

---

1. Although Johnson refers only to the "warrants" for himself and the unnamed individual, we presume that he implicitly references the applications and affidavits in support of those warrants as well. Therefore, we shall collectively refer to the application, affidavit, and warrant for the unnamed individual as "the first warrant." We shall collectively refer to the application, affidavit, and warrant for Johnson as "the second warrant."

forth in the "Application and Affidavit for Search and Seizure Warrant" for Johnson's residence, car, and person, as well as the transcript of a hearing in the trial court at which defense counsel sought discovery of the warrant to search the residence, car, and person of the unnamed individual ("the first warrant"). We shall do the same.

In pertinent part, the application for the search and seizure warrant as to Johnson, his home, and his car reflected that the affiants, two detectives with the Baltimore County Police Department, had been conducting an investigation into drug distribution activities in Essex. Pursuant to that investigation, one of the affiants and a third officer had already obtained the first warrant as to the residence, car, and person of the unnamed individual. The detectives received information that on a particular date at a particular time the unnamed individual was going to meet his cocaine supplier. They, along with other members of a police drug unit, followed the unnamed individual and saw him drive to a meeting with a "black male" near the intersection of Rossville Boulevard and Pulaski Highway. That person was driving a dark-colored Acura with Maryland license plates bearing the number LMZ374.

Police continued to follow the unnamed individual after the meeting concluded. When it appeared that the individual was driving to his residence, officers in a marked Baltimore County Police vehicle stopped the car and explained to the unnamed individual that they had a search and seizure warrant for his person, vehicle, and residence. They searched the unnamed individual and found a quantity of cocaine on his person.

The unnamed individual was arrested, advised of his rights, and interviewed. He admitted that the person driving the dark-colored Acura was indeed his cocaine supplier, that the supplier went by the nickname "Joe," and that he lived half way down the street on the left hand side of Marquette Road, a one-way street in White Marsh.

One of the affiants found the car in question parked in the driveway of 6077 Marquette Road. A check of local utility and

**130**

motor vehicle records revealed that William Thomas Johnson, who went by "Joey," resided in the home.

The police collected a bag of trash that had been left in the alley in back of the home. Inside the bag, they found correspondence bearing Johnson's name and the address of the home, as well as the cut corner of a plastic bag containing what proved, upon analysis, to be cocaine residue.

An application for a search and seizure warrant for Johnson's residence, car, and person ("the second warrant") was prepared and approved, and the warrant was executed. Johnson was then charged in the instant case.

Johnson's counsel sought to inspect the first warrant, which was for the search and seizure of the residence, car, and person of the unnamed individual who had identified Johnson as his supplier and told the police where Johnson lived. Counsel reasoned that if the first warrant was invalid, the information obtained from the unnamed individual and used to procure the second warrant was tainted. The evidence seized pursuant to the second warrant would thus be inadmissible.

The State refused to turn over the first warrant, and a hearing was held. Prior to the hearing, the court reviewed the first warrant *in camera* and determined that "the probabl[e] cause set forth in [the second] warrant is clearly independent and in no [ ] way affected" by the first warrant. The court denied the defense request to inspect the first warrant.

### DISCUSSION

■ Johnson now contends that the trial court erred by denying the defense request to examine the first warrant. He argues that disclosure of the first warrant was required under *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), and *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). That is, he contends that, under *Brady*, the prosecution in this case should have been required to permit the defense to inspect the first warrant because such an inspection might have revealed grounds for conducting a

hearing, under *Franks,* that might have resulted in the invalidation of the second warrant.

Johnson's reliance on *Franks* is misplaced. In that case, the Supreme Court held that,

> where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the [search] warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at the hearing the allegation of perjury or reckless disregard is established by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

430 U.S. at 155–56, 97 S.Ct. 996.

Johnson suggests that if he had been permitted to review the first warrant, he might have discovered a false statement therein. He further suggests that he then might have established that the false statement was made knowingly and intentionally or with reckless disregard for the truth, and that probable cause for the warrant would not have existed without the false statement. Johnson reasons that if the first warrant was invalid then any evidence gathered as a result of that warrant, including the unnamed individual's statement implicating Johnson, was tainted. He thus concludes that the statement could not properly have been used to establish probable cause for issuance of the second warrant.

■ We shall assume *arguendo* that the *Franks* holding bars not only the admission at trial of evidence seized pursuant to a search warrant containing a false statement that was made knowingly and intentionally or with reckless disregard for the truth, but also the use of such evidence to establish probable cause for the issuance of another warrant. We

nevertheless reject Johnson's argument. Even if the trial court had permitted counsel for Johnson to review the first warrant, Johnson would not have been able to challenge the truthfulness of any statement it contained. "Ordinarily, [an] appellant would have no standing to challenge the validity of [a] ... warrant issued for anyone other than himself." *Thompson v. State*, 62 Md.App. 190, 213, 488 A.2d 995 (1985). There can be no earnest dispute that the unnamed individual was the only person who had standing in regard to the first warrant.

■ As this Court has explained:

It has now been made clear ... that when a defendant seeks to establish that a search in question is the Fourth Amendment "fruit" of an earlier Fourth Amendment "poisonous tree," it is necessary that the defendant have the required Fourth Amendment standing to object with respect to both places and with respect to both occasions....
To litigate fully under the "fruit of the poisonous tree doctrine," a given defendant must enjoy standing, independently, both as to the fruit and also as to the antecedent tree.

*Id.* at 214 n. 4, 488 A.2d 995 (citation omitted). Since Johnson did not have standing to challenge the first warrant, he cannot argue that the second warrant is the tainted fruit of that warrant.

■ Johnson's argument as to *Brady*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, is without merit as well. In *Brady*, 373 U.S. at 87, 83 S.Ct. 1194, the Supreme Court held that due process principles are violated when the prosecution withholds, despite a demand from the defense, evidence that is favorable to the accused and material to guilt or to punishment, regardless of whether the prosecution acts in good faith or bad faith. Ordinarily, a *Brady* violation will result in the vacation of a judgment and a retrial. *See id.* at 88–91, 83 S.Ct. 1194. "[T]hree factors must coalesce to effect the *Brady* sanction: '(a) suppression by the prosecution after a request by the defense, (b) the evidence's favorable character for the

defense, and (c) the materiality of the evidence.'" *Green v. State*, 25 Md.App. 679, 699–700, 337 A.2d 729 (1975) (citation omitted). *See generally* Md. Rule 4–263(a) (providing that in Maryland, "[w]ithout the necessity of a request, the State's Attorney shall furnish to the defendant . . . [a]ny material or information tending to negate or mitigate the guilt or punishment of the defendant as to the offense charged").

Preliminarily, it appears that the *Brady* argument is not preserved for this Court's review. In the hearing before the trial court, Johnson's counsel argued only that a review of the first warrant might reveal that the second warrant was tainted. He did not argue that the first warrant might contain material that was exculpatory to Johnson.[2] *See* Md. Rule 8–131(a) ("Ordinarily, the appellate court will not decide any . . . issue unless it plainly appears by the record to have been raised in or decided by the trial court . . ."). Assuming *arguendo* that the argument was preserved, however, it is without merit.

*Brady* was a felony murder case in which the prosecution failed to disclose to the defense that an accomplice had confessed to being the actual killer. Thus, potentially exculpatory evidence was not before the court or the jury during the trial or sentencing. Johnson does not direct us to any case in which this Court, the Court of Appeals, or any other court

---

2. In pertinent part, counsel stated:

> In body, in that search and seizure warrant and an intrical [sic] and primary basis for it, was reference to another search and seizure warrant which was used to stop an individual. That individual had been stopped pursuant to that warrant. Now, he had allegedly given statements concerning my client. They then went and got a warrant against my client and I raise the issue of the fact that I would have to see and review that warrant to determine whether or not there was any taint fixed from that warrant to the information that was therefore given and used in the warrant before the Court in this case.

The trial court queried, "But what about the State's right to have their warrant secured and the probable cause for the warrant . . . secured?" It then stated, "Here's what we're going to do. . . . We'll leave that up to the Appellate Courts. . . . [T]he previous affidavit [ ] will be sealed in the record for appellate review. . . ."

applied the *Brady* analysis to pretrial proceedings involving information contained in, or omitted from, a search warrant.

In *United States v. Colkley*, 899 F.2d 297 (1990), police officers obtained arrest warrants for two defendants based in part on an informant's report that the defendants admitted to him that they robbed a bank. One of the defendants challenged the warrant for his arrest on the ground that, *inter alia*, the police failed to reveal in the application for the warrant that the same informant was unable to select that defendant's photo from an array. The United States District Court for the District of Maryland rejected the challenge, and the United States Court of Appeals for the Fourth Circuit affirmed. It explained:

> In effect, [the defendant] asks us to import the rule of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 . . . (1963), into the warrant application process. *Brady* and its progeny establish that the prosecutor has a duty to disclose to the defendant exculpatory evidence, defined as material evidence that would create a reasonable doubt as to the correctness of a guilty verdict at trial. . . .
>
> We must be cautious, however, about importing the panoply of *Brady* protections from trial practice into warrant application proceedings. The *Brady* rule derives from due process and is designed to ensure fair criminal trials. . . . It is at trial that the accused is cloaked with the presumption of innocence and may put the state to its proof beyond a reasonable doubt. By contrast, the probable cause determination in *Franks*, which derives from the Fourth Amendment, involves no definitive adjudication of innocence or guilt. Because the consequences of arrest or search are less severe and irremediable than the consequences of an adverse criminal verdict, a duty to disclose potentially exculpatory information appropriate in the setting of a trial may be less compelling in the context of an application for a warrant.

*Colkley*, 899 F.2d at 302 (citations omitted). The *Colkley* Court stated:

[A] requirement that all potentially exculpatory evidence be included in an affidavit would severely disrupt the warrant process. The rule would place an extraordinary burden on law enforcement officers, who might have to follow up and include in a warrant affidavit every hunch and detail of an investigation in a futile attempt to prove the negative proposition that no potentially exculpatory evidence had been excluded. . . .

*Id.* at 303. *Cf. Mays v. City of Dayton,* 134 F.3d 809, 815 (6th Cir.1998) (explaining, in the context of a civil rights action filed by a plaintiff who had been the subject of a criminal investigation, that "the due process protections provided to defendants prior to trial under *Brady* " do not apply to the warrant process "under the guise of a *Franks* analysis").

■ Assuming, without deciding, that *Brady* would apply to a situation such as that in the instant case, we see no error on the part of the trial court. To reiterate, the first warrant was for the residence, automobile, and person of an unnamed individual. Johnson acknowledges on appeal that the State may have had a legitimate interest in protecting the identity of that individual, and asserts that in asking to examine the warrant he was not attempting to ascertain the individual's identity. *See generally* Md. Rule 4–263(c)(2) (stating that the State is not required to disclose "[t]he identity of a confidential informant, so long as the failure to disclose the informant's identity does not infringe on a constitutional right of the defendant and the State's Attorney does not intend to call the informant as a witness"). Yet defense counsel apparently never suggested to the trial court that it redact those portions of the warrant that could have revealed the identity of the unnamed individual. Rather, counsel demanded only that he be permitted to review the warrant in its entirety.

■ Under the circumstances, the trial court quite properly elected to review the first warrant *in camera* rather than to permit defense counsel to examine it. In cases where a defendant seeks access to confidential or sensitive records, "in camera review is the usual procedure. . . ." *Robinson v. State,*

354 Md. 287, 323–24, 730 A.2d 181 (1999) (dissenting opinion). *Cf. Zaal v. State,* 326 Md. 54, 81–87, 602 A.2d 1247 (1992) (where defendant in child sexual abuse case sought to inspect victim's education records in order to challenge victim's credibility, trial court erred by simply denying request without at least conducting *in camera* review of records and then considering whether to permit defense counsel to review the records alone or in the court's presence); *Sutton v. State,* 25 Md.App. 309, 314–15, 334 A.2d 126 (1975) (absent showing by defendant of particularized need to view Grand Jury minutes that contained testimony of witnesses against him at trial, trial court properly declined to permit defense to examine minutes or to review them itself *in camera* ). As this Court has pointed out, *Brady* "do[es] not provide a constitutional device permitting [a defendant] to cast his net upon the evidentiary waters, nor do[es] it] extend our rules of discovery to such broad, net-like fishing expeditions." *Green,* 25 Md.App. at 701, 337 A.2d 729.

The trial court implicitly determined that the first warrant contained no information that could have been exculpatory to Johnson by negating probable cause for the second warrant. Upon our own review of the first warrant, we agree. The first warrant made no reference to Johnson, and nothing in the first warrant could be construed as negating or conflicting with anything set forth in the second warrant.

The court expressly stated, moreover, that the application and affidavit in support of the second warrant established probable cause for issuance of the second warrant, even without reference to the first warrant. Johnson does not challenge this determination, and any such challenge would be unavailing.[3] *See Greenstreet v. State,* 392 Md. 652, 670–71, 898 A.2d 961 (2006) (summarizing that, in reviewing an issuing

---

**3.** The application for the second warrant made little mention of the first warrant. It merely mentioned that, at the time police first saw the unnamed individual meet with Johnson, they "had a search and seizure warrant in [their] possession [which] named the individual we had been performing surveillance on, his vehicle, and his residence." The application further indicated that, when the officers stopped the unnamed individual after watching him meet with Johnson they told him about

judge's approval of an application for a search warrant, an appellate court looks to whether, based on the four corners of the warrant, the issuing judge had a substantial basis to believe that probable cause existed).

In truth, the instant case involves nothing more than a discovery dispute. Johnson points to nothing in the discovery rule, Md. Rule 4–263, that would require the State to permit defense counsel to inspect the first warrant under the circumstances. Absent any showing by Johnson that the first warrant might contain information that would have any legitimate bearing on his case, we are satisfied that the trial court's *in camera* review of the warrant was sufficient to resolve the discovery dispute. Indeed, Maryland Rule 4–263(c)(2) suggests that the State quite properly denied the request for inspection. That subsection provides:

(c) **Matters not subject to discovery by the defendant.** This Rule does not require the State to disclose:

. . .

(2) The identity of a confidential informant, so long as the failure to disclose the informant's identity does not infringe on a constitutional right of the defendant and the State's Attorney does not intend to call the informant as a witness.

. . .

Md. Rule 4–263(c)(2).

Here, the State did not call the unnamed individual as a witness, and Johnson expressly denies that he sought to

---

the warrant, searched his person and vehicle, and seized "a quantity of cocaine."

Independently of the first warrant, the application made clear that, while police were keeping the unnamed individual under surveillance, they saw him meet with a person driving a dark-colored Acura with Maryland license plates bearing the number LMZ374. The unnamed individual gave the police the Johnson's nickname and approximate address, and the officers were able to locate the suspect vehicle and ascertain Johnson's full name and precise address. Subsequently, the police analyzed a substance found in Johnson's abandoned trash and determined that it was cocaine.

ascertain the identity of the individual. Thus, Johnson does not suggest that the failure to disclose the identity of the unnamed individual in and of itself infringed upon any constitutional right. We are hard pressed to believe that the first warrant could be sufficiently redacted to permit the defense to inspect it without ascertaining the unnamed individual's identity. It appears, rather, that in seeking to inspect the warrant the defense was attempting to engage in a fishing expedition that likely would have netted confidential and undiscoverable information.

Absent any showing by Johnson that the first warrant might contain information that would have any legitimate bearing on his case, we are satisfied that the trial court's *in camera* review of the warrant was sufficient to resolve the discovery dispute. *Cf. Zaal v. State,* 326 Md. 54, 81–87, 602 A.2d 1247 (1992) (where defendant in child sexual abuse case sought to inspect victim's education records in order to challenge victim's credibility, trial court erred by simply denying request without at least conducting *in camera* review of records and then considering whether to permit defense counsel to review the records alone or in the court's presence). *See generally Robinson v. State,* 354 Md. 287, 323–24, 730 A.2d 181 (1999) (dissenting opinion) (explaining that in cases where a defendant seeks access to confidential or sensitive records "in camera review is the usual procedure . . .").

**JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.**

Concurring Opinion by MURPHY, C.J.

I concur in the judgment, but write separately to emphasize two points. First, the case at bar does not present the issue of whether the "first" search warrant was subject to "inspection for possible use in cross-examination." *Leonard v. State,* 46 Md.App. 631, 639, 421 A.2d 85 (1980), *aff'd,* 290 Md. 295, 429 A.2d 538 (1981). Second, the case at bar does not present the issue of whether the affiant's strategic decision to withhold information that would establish the lack of probable cause

has resulted in the issuance of a search warrant by a judge who was "misled by [the incomplete] information ... that the affiant knew [would create a] false [impression that probable cause existed.]" *United States v. Leon,* 468 U.S. 897, 923, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).