REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1128

September Term, 2013

---

JOHN RIGGINS A/K/A SEAN RIGGINS

v.

STATE OF MARYLAND

---

Eyler, Deborah S.,
Kehoe,
Rodowsky, Lawrence F.
        (Retired, Specially Assigned)

JJ.

---

Opinion by Kehoe, J.

---

Filed: May 27, 2015

Nearly forty years ago, the Court of Appeals held that a defendant in a criminal case has a due process right to inspect prior written statements made by prosecution witnesses that are in possession of the State. *Carr v. State*, 284 Md. 455, 472–73 (1978). Two years later, this Court held that this right existed independently of the State's duties imposed by the criminal discovery rules. *Leonard v. State*, 46 Md. App. 631, 636–37 (1980), *aff'd*, 290 Md. 295 (1981). This appeal requires us to apply the principles of *Carr* and related decisions to decide whether a prosecutor is required to provide to defense counsel copies of a use of force report prepared by an arresting officer who testified at trial.

Following a jury trial in the Circuit Court for Baltimore City, John Riggins (a/k/a Sean Riggins) was convicted of disarming a police officer, resisting arrest, and second degree assault. He received consecutive sentences for each conviction. Mr. Riggins presents three contentions on appeal.

*First*, he argues that the trial court erred when it declined to order the prosecutor to disclose to defense counsel a use of force report pertaining to appellant's arrest that had been prepared by a police officer who testified at trial. The State concedes that a use of force report "authored by a police officer who testified at trial [is] subject to disclosure under . . . *Jencks v. United States,* 353 U.S. 657 (1957), and *Carr v. State*, 284 Md. 455 (1978), as implemented by Maryland Rule 4-263(d)(3) (2013)."[1] The State asserts,

---

[1] Md. Rule 4-263(d)(3) was revised after appellant was convicted (effective January 1, 2014) to further designate the "written statements" provision as subsection

(continued...)

however, that appellant's contentions are not preserved for our review. We conclude that the issue is preserved and we agree with the parties that the report should have been disclosed. We cannot say that the error was harmless. Therefore, we must vacate appellant's convictions.

*Second,* appellant contends that there was insufficient evidence to sustain his convictions for resisting arrest because the arrest itself was illegal. We find this argument unpersuasive.

*Third*, appellant asserts that his convictions for second degree assault and resisting arrest merged, and the trial court erred by sentencing him separately for each. This contention is mooted by our holding that his convictions must be vacated.

We will vacate the judgments of the circuit court and remand this case for further proceedings.

## Analysis

### I. The Use of Force Report

Appellant's convictions arose out of an incident that occurred when several Baltimore police officers responded to a complaint that a man was selling drugs in a vacant home located at 612 North Cumberland Street. When the officers arrived at the house, they observed appellant standing in the doorway. When appellant saw the police,

---

[1](...continued)
(C), but otherwise remains substantively identical. We shall apply the 2013 version of the rule in effect for appellant's trial.

he attempted to flee. This resulted in a physical altercation during which appellant was struck with a baton.[2] Three officers were involved in the mêlée: Detective Jeffrey Lilly and Officer Carlos Moorer, both of whom testified at appellant's trial, and an otherwise unidentified "Officer Golimowski," who did not.

The Baltimore City Police Department requires its officers to prepare "use of force" reports when the officer uses physical force in an encounter with a member of the public. The record before us indicates that the Department maintains these reports in the officer's personnel file, and does not disclose the documents to third parties. Moorer prepared a use of force report after appellant's arrest. The issue before us is whether the trial court erred when it denied appellant's motion to require the prosecutor to provide him with a copy of Moorer's statement.

Defense counsel first raised the issue of disclosure of the use of force reports during pre-trial discovery. On October 5, 2012, defense counsel sent an email to the prosecutor requesting disclosure of the use of force reports, in compliance with the State's continuing discovery obligations. A few days later, the prosecutor responded, informing defense counsel that she did not have access to that information. The prosecutor advised defense counsel that "[t]he proper way" to obtain the use of force reports was to subpoena the Police Department. The prosecutor also informed defense

---

[2]We will discuss the evidence as to the events surrounding the arrest in greater detail in Part II of this opinion.

counsel that the use of force reports are "part of the personnel file and are not routinely disclosed."

Defense counsel then served subpoenas on the Department. The Department's custodian of records responded on February 15, 2012. The documents forwarded with the response did not include use of force reports from any of the officers involved with appellant's arrest. Defense counsel did nothing more to obtain the use of force reports until the first day of trial, July 15, 2013.

On the morning of trial, the court addressed preliminary matters, selected the jury, and then recessed for lunch. It was not until the court reconvened after the lunch recess, but before the jury entered the courtroom, that defense counsel raised the issue of the State's failure to disclose the use of force reports. Defense counsel requested that the court conduct an *in camera* examination of the use of force reports in light of the Court of Appeals' opinion in *Fields v. State*, 432 Md. 650 (2013).[3] The trial court indicated that it was hesitant to undertake such an effort, stating to defense counsel "[y]ou're telling me as the jury's literally standing in the hall about an incident that could've been and should've

---

[3] The Court of Appeals considered two issues in *Fields*. The first was whether the motion court erred in declining to conduct an *in camera* examination of an internal affairs division investigation of two key State's witnesses. 432 Md. at 665-73. The Court held that the motion court was required to conduct such an examination. *Id.* at 672–73. The second issue was whether the trial court erred in refusing to permit defense counsel to cross-examine the police officers about the subject matter of the investigation. *Id*. at 673-75. The Court again concluded that the trial court erred. *Id.* 674–75.

4

been dealt with earlier today[.]" The following colloquy then took place (emphasis added):

> THE COURT: . . . You're saying – you're not asking for the results of an investigation. You're not asking this court to look at what was said about the officers. ***You're just saying you want a report that they wrote, correct?***
> . . . .
>
>                      \* \* \* \*
>
> [DEFENSE COUNSEL]: ***Yes, and when requested of the State of the documents [sic], their position was that it is part of the personnel file.***
>
> THE COURT: Well, that may be true or not, that's not the issue. The point is, your subpoena goes to the custodian of records. And, whatever the State should turn over to you in discovery, again, is a different issue, so.
>
>                      \* \* \* \*
>
> And, you're saying that the State has told you that it's somewhere else, and it's something that they did not turn over in discovery and that they should have, certainly. Another discovery violation. Again, if it's what's required. My point to you is, that should've all been done beforehand.
>
> You knew in January when you sent the subpoena out, and whenever, I don't know, sometime in October 2012,[4] that you weren't getting the documentation. So, your recourse would've been to go to the discovery Judge; that not done that [sic], and doing this at this late hour, is problematic to the Court. . . .
>
>                      \* \* \* \*
>
> [Y]ou have not brought [the Department's failure to comply with the subpoena] to the discovery Judge, where you had the opportunity to do this.

---

[4]The trial court misspoke; the Department's response to the subpoena was mailed on February 15, 2012.

To do this now at trial is, again, as I stated is problematic. I note your objection. We're going to move on. I note your objection, and I will –

[DEFENSE COUNSEL]: May I just make –

THE COURT: You can in one second, hold on . . . .

THE COURT: Okay, all right. What else do you want to say . . . .

[DEFENSE COUNSEL]: *Essentially, that the State's duty to disclose, is ongoing.* And, we are not in a position where we're asking for a postponement. *We're simply asking that the Court order the State to produce those documents.* And, we're not seeking to halt the trial in any way. We were just simply asking that the State produce these documents.

THE COURT: *Well, now, that's a different issue.* We are at a point where you are asking them to produce something; they're saying it's not within their purview. Maybe that's true, maybe it's not. *If we find – if we go forth and we find that the Court is wrong, which is possible – then, if Mr. Riggins is found guilty . . . . then there's a perfect issue on appeal.*

I'm going – I'm a Trial Court. I'm going to proceed with the trial. I believe that those discovery issues should've been resolved in a different way. I agree that discovery is always ongoing, and it's always on the State to provide information.

But, since it was requested, not turned over; and, again, the reason allegedly – and, again, this was presented to the Court, that it is within the police department; the State doesn't have it. The Court of Appeals will listen to that argument, if it comes to that.

But, right now, the motion to order the State to turn over use of force reports that may exist that were requested in discovery, but then again not brought to the Court's attention about any discovery violation is denied. . . .

In order to clarify the record, the trial court then asked the prosecutor whether she

"[had] a copy of what [defense counsel is] referring to?" The prosecutor responded:

"I do not have a copy of it, Your Honor. I've never seen these documents. I don't know anything about them." The trial court directed that the jury be brought into the courtroom and trial commenced.

The State's only witnesses were Lilly and Moorer, two of the officers involved in appellant's arrest. Moorer provided detailed testimony as to appellant's actions. On cross-examination, defense counsel asked Moorer if he had prepared a use of force report and if "that report essentially depicted . . . what occurred" at the time of appellant's arrest. Moorer answered both questions in the affirmative. Moorer further testified that he did not have a copy of the report with him at trial. Defense counsel did not ask to see the report or object at that time to the reports' unavailability.[5]

Appellant contends that "[t]he trial court abused its discretion by not ordering the State to turn over Officer Moorer's" use of force report. For its part, the State concedes that the court erred but, as we have said, contends that appellant's contentions are not preserved for review. A brief tour of the legal landscape will assist in assessing the State's preservation argument.

---

[5]For his part, Lilly testified that he had not prepared a use of force report, but that his supervisor did. Lilly did not bring a copy of the report to trial.

**(1)**     **A Defendant's Right to Inspect Pre-Trial Statements by Prosecution Witnesses: *Jencks v. United States*, 353 U.S. 657 (1957); *Carr v. State*, 284 Md. 455 (1978); and *Leonard v. State*, 46 Md. App. 631 (1980), *aff'd*, 290 Md. 295 (1981).**

The opportunity to cross-examine a prosecution witness based on a prior written statement about the events for which the accused is on trial protects the right of confrontation. In the landmark decision *Jencks v. United States*, 353 U.S. 657, 666–67 (1957), the Supreme Court reversed convictions because the Government refused to allow defense counsel to inspect written reports made by two prosecution witnesses. Rejecting the Government's argument that the accused had to establish inconsistency between the contents of the reports and the witnesses' trial testimony before inspection was required, the Court held that:

> We hold . . . that the petitioner is entitled to inspect the reports to decide whether to use them in his defense. Because only the defense is adequately equipped to determine the effective use for purpose of discrediting the Government's witness and thereby furthering the accused's defense, the defense must initially be entitled to see them to determine what use may be made of them. Justice requires no less.

*Id*. at 668–69 (footnotes omitted).

The Court of Appeals adopted the *Jencks* disclosure principles in *Carr v. State*, 284 Md. 455, 472–73 (1978). At issue in *Carr* was whether the trial court erred in denying a defense request to inspect a signed statement made by a prosecution witness on the morning after the shooting for which the defendant was on trial. The writing

8

contained statements inconsistent with the witness's testimony. *Id.* at 458. The *Carr* Court explained:

> Every skilled trial advocate knows the crucial importance in such situations of cross-examination. Effective cross-examination here made it necessary that defense counsel be permitted to directly confront the witness with his inconsistent prior statement. To deny to defense counsel the tool necessary for such adequate cross-examination under these circumstances amounts in our view to a denial to the defendant of due process of law. Hence, a new trial is mandated.

*Id.* at 472–73.

In *Leonard v. State*, 46 Md. App. 631, 637-38 (1980), *aff'd*, 290 Md. 295 (1981), a victim testified on cross-examination that she had given a written statement to the police, whereupon defense counsel immediately requested "a copy of that[.]" 46 Md. App. at 635. The prosecutor objected, stating that "this is the first time [defense counsel] has formally asked me for this document," that he was conducting "a fishing expedition," and that there was no foundation for admitting the statement as a prior inconsistent statement. *Id.* The trial court reviewed the statement, found "no exculpatory material in it," and refused to permit defense counsel to inspect it. *Id.* at 636-37. This Court reversed, explaining that "*Carr* makes clear . . . that a defendant's right, at trial, to inspect the prior statement of a State's witness who has testified is not necessarily limited (1) by the rules pertaining to pretrial discovery, or (2) to statements that are merely exculpatory." *Id.* at 637. "When confronted with the actual testimony of a critical witness and the knowledge that the witness has given a prior statement bearing on a material issue in the case," the

9

right to inspect that statement protects the defendant's right to confront the witness. *Id.* at 637–39.[6]

The reasoning and holdings of *Carr* and its progeny are reflected in Maryland's criminal pre-trial discovery rule. Md. Rule 4-623(d)(3) states that a State's Attorney must disclose "all written statements of [a State's witness] that relate to the offense charged[.]" The State's Attorney must use "due diligence to identify all of the material . . . that must be disclosed under this Rule." Rule 4-263(c)(1). Moreover, "[t]he obligations of the State's Attorney . . . extend to material and information . . . in the possession or control of the attorney . . . [and] any other person who . . . has reported to the attorney's office in regard to the particular case." Rule 4-263(c)(2). The State's Attorney must provide this information "[w]ithout the necessity of a request" from defense counsel. Rule 4-263(d).

**(2)     A Defendant's Right to Inspect Otherwise Confidential Records: *Robinson v. State*, 354 Md. 287 (1999); *Zaal v. State*, 326 Md. 54 (1992); and *Fields v. State*, 432 Md. 650 (2013).**

The State's obligation to provide pre-trial written statements by witnesses extends to police records that are otherwise confidential. In *Robinson v. State*, 354 Md. 287 (1999), the Court considered whether *Carr* and other decisions required disclosure of written statements made by police officers in the course of an internal affairs division investigation pertaining to Robinson's arrest. During trial, the court reviewed the

---

[6]This Court's decision in *Leonard* was affirmed in a per curiam decision by the Court of Appeals "[f]or the reasons set forth by Judge Wilner in *Leonard v. State*, 46 Md. App. 631, 421 A.2d 85 (1980)." 290 Md. 295, 295–96 (1981).

10

statements *in camera*, but refused to let defense counsel see them, on the ground that the officers had been exonerated as a result of the investigation. *Id.* at 292–93. At both the trial and appellate levels, the State argued that the records were not in the prosecutor's possession, asserting that "because the records are confidential . . . the prosecutor was not entitled to them and therefore not in possession of them." *Id.* at 306 (internal quotation marks omitted). The Court of Appeals did not agree:

> Confidentiality does not ordinarily negate possession, actual or constructive. In other words, that a statement may be confidential goes to its discoverability, rather than to who possesses it. In this State, each major police department has an IAD division. Consequently, because that division is a part of the police, its records are in the possession of the police. And if the police is an arm of the prosecution, it follows that the records are also constructively in the possession of the prosecution . . . .

*Id.* at 309. The Court held that, even though the internal affairs records were confidential and "not, on that account, shared with, or readily available to, the prosecution[,]" neither the police department's claim of confidentiality, nor the prosecutor's claim of inaccessibility could defeat the accused's right to review them. *Id.* at 309–13. The Court held that the trial court erred in conducting an *in camera* review of the statements. Instead, defense counsel should have been permitted to inspect the statements at trial, in accordance with "the *Jencks/Carr/Leonard* line of cases." *Id.* at 312. The Court concluded:

> In this case, the defendant has a particularized need for access to the officers' statements, to test the officers' trial testimony. On the other hand, the officers have been exonerated by the IAD investigation; thus, any

11

privacy interest in their statements that may have existed is no longer applicable.

*Id.* at 313.

The appropriate procedure can vary according to the nature of the documents in question. In *Zaal v. State*, 326 Md. 54, 83–87 (1992), the Court held that, before inspecting the educational records of an alleged victim of child abuse, the defendant was required to show a need for pre-trial disclosure, and once that need was established, the trial court was to review the records *in camera* to strike a balance between the victim's privacy interest and the defendant's right to a fair trial.

In *Fields v. State,* 432 Md. 650 (2013), the issue was a defendant's access to records of an IAD investigation into allegations that two police witnesses had falsified their time sheets. After reviewing summaries of the records *in camera*, the trial court refused to allow defense counsel to inspect them. *Id.* at 663. The Court of Appeals recognized that "'internal affairs records involving alleged administrative rule violations' by police officers are 'personnel records' under [the Maryland Public Information Act],'" which generally "are 'mandatorily exempt from disclosure by the custodian of records[.]'" *Id.* at 666. That notwithstanding, the Court explained that "[a] person facing criminal charges may be entitled nonetheless to discovery of confidential personnel records[,]" because even a legitimate "confidentiality interest" in such material "must yield, in the appropriate case, to the defendant's interest in having an opportunity to mount a defense and confront the witnesses against him." *Id.* at 666, 672 (citing

12

*Robinson*, 354 Md. at 308). The Court repeated its "prior admonition in *Zaal* that a court in reviewing material for discovery purposes may deny a defendant any form of access to the material only if nothing in it, 'in anyone's imagination, [could] properly be used in defense or lead to the discovery of usable evidence.'" *Id.* at 670 (quoting *Zaal*, 326 Md. at 88). The *Fields* Court held that "the motion court, at a minimum, had the obligation to review the internal affairs files, not simply the summaries, to decide whether the files contained anything 'even arguably relevant and usable' by the defense to impeach the detectives and, ***only*** if the answer . . . [is] 'no,' then 'deny the defendant total access to the records.'" *Id.* at 670–71 (quoting *Zaal*, 326 Md. at 88) (emphasis in *Fields*).

Collectively, these authorities underscore several principles that are pertinent to the case before us. First, "the significance, to an accused, of determining whether a witness' trial testimony is inconsistent with the witness' prior written statement on the subject" establishes a "particularized need" for disclosure of otherwise confidential records related to the accused's arrest. *Robinson*, 354 Md. at 301. Second, at least as regards witness statements made in the course of internal investigations that have been completed, the police witness no longer has a sufficient privacy interest in the statement to warrant non-disclosure. *Id.* at 313. Third, in other situations, the court—and not the prosecutor or the police department—is to decide whether disclosure is appropriate, and the court should order disclosure if the records contain information "even arguably relevant and usable" by the defendant. *Fields,* 432 Md. at 670*; Zaal*, 326 Md. at 88. Finally, statements by police

13

officer witnesses are in the constructive possession of the prosecutor. *Robinson*, 354 Md. at 311.

With these lessons in mind, we return to the case before us.

**(3)     The Trial Court's Ruling.**

Although the trial court "[a]bsolutely agree[d]" with defense counsel that any use of force reports written by the officers involved in arresting appellant "were not immune from discovery," the court focused on appellant's failure to seek pretrial relief for the State's non-disclosure. In our view the colloquy between the court and counsel reveals misunderstandings about the State's disclosure obligations both in pretrial discovery and during trial, under the *Jencks-Carr-Leonard* and *Robinson-Fields* lines of cases. We explain.

We first address the State's pretrial discovery obligations. The trial court, defense counsel, and the prosecutor agreed that any use of force report authored by a testifying officer involved in arresting appellant was subject to pretrial disclosure, as a written statement of a prosecution witness under Rule 4-263(d)(3). Nonetheless, when defense counsel inquired about such statements during pretrial discovery, the prosecutor informed defense counsel that she did "not have access to th[at] information," and advised defense counsel that "[t]he proper way" to obtain the reports was to subpoena the Police Department. This response reflects a misconception of the prosecutor's obligations under Rule 4-263. It is the State's affirmative duty to disclose any written statement by a

14

witness whom the State plans to call at trial. *See* Md. Rule 4-263(d)(3). Further, the trial court and the prosecutor mistakenly distinguished the disclosure obligations of the State's Attorney from those of the Baltimore City Police Department. That the use of force reports were in the physical possession of the Department did not obviate the State's responsibility to disclose them. "[O]rdinarily the police are an arm of the prosecution, for purposes of the *Jencks/Carr* analysis, and, thus, a disclosure requirement applicable to the prosecution applies to them as well." *Robinson*, 354 Md. at 304 (citing *Barbee v. Warden, Md. Penitentiary*, 331 F.2d 842, 846 (4th Cir. 1964) ("The police are also part of the prosecution, and the taint on the trial is no less if they, rather than the State's Attorney, were guilty of the nondisclosure.")).

Accordingly, the prosecutor should have attempted to obtain any use of force reports concerning appellant's arrest. If the Department asserted that the documents were confidential, the prosecutor should have referred the matter to the court. *See* Md. Rule 4-263(m)(1)-(2) ("***On motion of a party, [or] a person from whom discovery is sought***, . . . the court, for good cause shown, may order that specified disclosures be denied or restricted in any manner that justice requires" or "may permit any showing of cause for denial or restriction of disclosures to be made in camera.") (emphasis added). It is evident from the case law and the language of the rule that neither the prosecutor nor the Department can make a unilateral decision to refuse disclosure. *See* Md. Rule 4-263(g)(1)(B) (A State's Attorney is not "required to disclose . . . material or information

15

***if the court finds*** that its disclosure is not constitutionally required and would entail a substantial risk of harm to any person that outweighs the interest in disclosure.") (emphasis added).

The trial court's ruling was based upon defense counsel's failure to raise the State's non-disclosure both during discovery and before the jury was selected. Defense counsel could have raised the issue earlier but, by focusing exclusively on defense counsel's failings, the trial court failed to give proper consideration to the prosecutor's contribution to the problem before it. In our view, that contribution was considerable. The prosecutor was presumably aware of the *Jencks/Carr/Robinson* line of cases. In light of the charges against appellant, the prosecutor should have anticipated that one or more of the officers involved had prepared a use of force report. Under the circumstances, it was the ***prosecutor's*** affirmative duty to obtain any reports. The prosecutor did not discharge her duty—she admitted that, as of the day of trial, she had not seen the reports and "[d]idn't know anything about them."

The trial court denied appellant's motion on the basis of defense counsel's failure to raise the State's non-disclosure on a timely basis. The trial court's ruling was inconsistent with the *Jencks/Carr* line of cases, which make it clear that a defendant's "right, at trial, to inspect the prior statement of a State's witness" is separate from his right to obtain that statement in pretrial discovery. *See Leonard*, 46 Md. App. at 637.

**(4) The State's Preservation Argument.**

As we have noted, the State asserts that appellant failed to preserve this issue for appellate review. The State makes two arguments in support of this contention. Neither argument is persuasive.

First, the State asserts that appellant's trial counsel argued only that the prosecutor failed to fulfill her discovery obligations, while on appeal, appellant asserts that his fair trial rights under *Carr* and *Robinson* were violated when the trial court refused to order disclosure of the use of force report. We do not agree with the State's characterization of defense counsel's argument to the trial court. To be sure, counsel did assert that there had been a violation of Rule 4-263 but counsel also contended, and we believe that the trial court understood counsel to contend, that the prosecution's disclosure obligation extended through trial.[7] This is sufficient to preserve appellant's challenge for this Court.

Second, the State contends that appellant waived his claim of error because defense counsel failed to renew her request to inspect the use of force report after Moorer

---

[7]For the reader's convenience, we set out again the relevant exchange between counsel and the trial court (emphasis added):

> [DEFENSE COUNSEL]: ***Essentially, that the State's duty to disclose, is ongoing.*** And, we are not in a position where we're asking for a postponement. ***We're simply asking that the Court order the State to produce those documents.*** And, we're not seeking to halt the trial in any way. We were just simply asking that the State produce these documents.

> THE COURT: ***Well, now, that's a different issue.*** We are at a point where you are asking them to produce something; they're saying it's not within their purview. Maybe that's true, maybe it's not.

testified. We do not agree. Counsel had unsuccessfully litigated the issue of whether she could inspect the use of force statement during trial. The trial court had made clear that it would not order the prosecutor to produce the use of force reports under either of the theories presented by defense counsel and, moreover, the prosecutor admitted that she did not have the report and had no knowledge of its contents. Against this backdrop, another request to inspect Moorer's report was not necessary to preserve appellant's assignment of error. *See Massey v. State*, 173 Md. App. 94, 117 (2007) ("While the burden rests with the defense to invoke the [State's obligation to disclose under *Carr* and *Leonard*] '[n]o ritual of words' is required, but the defendant must plainly tender to the Court the question of the producibility of the document ***at a time when it is possible for the Court to order it produced***, or to make an appropriate inquiry.'" (quoting *United States v. Hanna*, 55 F.3d 1456, 1459 (9th Cir. 1995) (citations omitted) (emphasis in *Hanna*). We turn to the appropriate appellate remedy.

The State's case rested entirely upon the credibility of Officers Moorer and Lilly. "'In a jury trial, judging the credibility of witnesses is entrusted solely to the jury, the trier of fact; only the jury determines whether to believe any witnesses, and which witnesses to believe.'" *Fields*, 432 Md. at 677 (quoting *Robinson*, 354 Md. at 313)). Under the circumstances, we cannot conclude beyond a reasonable doubt that the trial court's error did not affect the outcome of the trial and the State does not suggest otherwise. We must vacate appellant's convictions and remand this case for further proceedings. Those

18

proceedings should include an effort by the State's Attorney to obtain a copy of Moorer's use of force report. If either the Department or Moorer objects to disclosure of the report, the trial court must review the report in order to decide whether Moorer's and the Department's interest in confidentiality outweighs appellant's rights to a fair trial. *See Fields,* 432 Md. at 670–71.

## II. The Sufficiency of the Evidence for the Resisting Arrest Conviction

Appellant contends that "the evidence was insufficient to find [him] guilty of resisting arrest because the State failed to prove that he was resisting a lawful arrest." Even though we have vacated appellant's convictions, we must address his sufficiency challenge. *See*, *e.g.*, *Bircher v. State*, 221 Md. App. 376, 397–98 (2015) ("[I]f we agree with appellant that the evidence was insufficient, the Double Jeopardy Clause to the United States Constitution prohibits a retrial based on the prosecution's failure to present sufficient evidence the first time around.").

We will conclude that the evidence is sufficient if, viewing the evidence in the light most favorable to the State, "***any*** rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *State v. Smith*, 374 Md. 527, 533 (2003). After assessing the evidence in the light most favorable to the State, a reasonable jury could conclude the following.

19

At about 2 p.m. on January 30, 2012, several Baltimore City police officers responded to a complaint that a man wearing a black jacket was selling drugs inside a vacant row house located at 612 North Cumberland Street. Among the responders were Moorer and Lilly.

Lilly testified that, when he arrived at the row house, he saw a man wearing a black coat with a fur hood at the door. The man, whom Lilly identified as appellant, stepped back into the house as soon as he saw the police. Shortly thereafter, Lilly heard over the radio that the man was fleeing from the rear of the house, and Lilly ran down an adjacent street to cut him off. While running, Lilly saw the man jump on top of a freestanding wooden door, separating the street from an alley.[8] Lilly testified that he could not see appellant's hands and that appellant was wearing "a big jacket[.]" Lilly was concerned that appellant might be armed, so he drew his service weapon and told appellant to get off the door. Appellant did not comply, and the door collapsed under him. Appellant then ran into the alley.

After holstering his handgun, Lilly pursued appellant into the alley, whereupon appellant stopped and turned to face the officer. Lilly ordered appellant "to get down," and placed one hand on appellant's left shoulder "to force him down" while radioing their location. Appellant then tackled Lilly at the waist and both men fell to the ground,

---

[8]The witnesses used the term "alley." From photographs in the record, the "alley" appears to be no more than four feet wide—"passageway" might be a more appropriate term.

wrestling and punching one another. In the ensuing struggle, appellant pulled Lilly's handgun from its holster.

About this time, Moorer arrived at the scene. He testified that he heard Lilly yell that "his gun was out of his holster." He described appellant as being "over top of Lilly, just banging" him and "throwing strikes in his face." Moorer tried to pull appellant off of Lilly, whereupon appellant began to strike Moorer. After retrieving and holstering his weapon, Lilly struck appellant several times with a baton, but appellant was "still fighting" with the officers. Eventually, appellant said "I quit," and the officers were able to handcuff him.

Moorer suffered a hand injury, which was treated at the scene, and appellant was treated at a hospital for scrapes and bruises. Photographs of the injuries, Lilly's torn and soiled uniform, and the alley were admitted into evidence. We next consider whether this evidence was sufficient to support a conviction for resisting arrest.

Resisting arrest is a statutory crime[9] that encompasses "the well-defined parameters of Maryland common law concerning resisting arrest." *McNeal v. State*, 200 Md. App. 510, 528 (2011), *aff'd on other grounds*, 426 Md. 455 (2012). As the trial court correctly instructed the jury, one of the elements of this offense is "that the arrest was lawful, that is that the officer had probable cause to believe that the Defendant had committed the crime of second degree assault."

---

[9]Md. Code, § 9-408(b)(1) of the Criminal Law Article states in pertinent part that:"[a] person may not intentionally . . . resist a lawful arrest."

An arrest takes place at the point "(1) when the arrestee is physically restrained, or (2) when the arrestee is told of the arrest and submits[,]" which may occur by means of "'any act that indicates an intention to take him into custody and that subjects him to the actual control and will of the person making the arrest.'" *Little v. State*, 300 Md. 485, 510 (1984) (citation omitted). When a warrantless arrest is not supported by probable cause, an individual may use reasonable force to resist. *Barnhard v. State*, 325 Md. 602, 614 (1992).

Appellant contends that the officers made two attempts to arrest him, neither of which was supported by probable cause, and thus his resistance was justified. Appellant asserts that the first attempt occurred when Lilly "first saw [appellant] jump on the wooden door out of the alley, [as] he pulled his gun and commanded him to get off the door," then chased him into the alley, where he put his hand on appellant's shoulder "to have control of him" by forcing him down. Appellant contends that the second attempted arrest took place when Moorer "jumped on him," while he was struggling with Lilly. Appellant maintains that because he "was still resisting an illegal arrest" by Lilly when Moorer attempted the second arrest his "lawful use of force in resisting one illegal arrest should not be the basis for a lawful arrest that results in a resisting arrest conviction."

The State responds that the initial encounter between Lilly and appellant was an investigatory or "Terry" stop supported by a reasonable suspicion that criminal activity was afoot, and that "Lilly's conduct was at most a 'hard take-down'—an investigatory

stop accompanied by arrest-level force—which still falls short of the arrest claimed by appellant." We agree.

"In determining whether an investigatory stop is in actuality an arrest requiring probable cause, courts consider the 'totality of the circumstances.'" *In re David S.*, 367 Md. 523, 535 (2002). "Not every seizure of a person is 'elevated automatically into an arrest,' simply because the police used 'measures . . . more traditionally associated with arrest than with investigatory detention.'" *Barnes v. State*, 437 Md. 375, 391 (2014) (citations omitted). When a police officer directs a person to stop but the person instead flees, there is neither restraint nor submission to custody. *See Wynn v. State*, 69 Md. App. 536, 541-42 (1987). At times, arrest-level force may be warranted in making a stop, "to protect officer safety or to prevent a suspect's flight." *Elliott v. State*, 417 Md. 413, 429 (2010).

Lilly testified that when he arrived at 612 North Cumberland Street appellant immediately retreated into the house upon seeing the police, and fled out the back. Appellant then refused to comply with Lilly's commands and continued to run into the alley. Fearing for his safety, Lilly briefly drew his service weapon, but holstered it before chasing appellant into the alley. When Lilly encountered appellant in the alley, he did not draw his weapon; instead, he gave appellant "more commands to get down." Lilly testified that he put his hand on appellant's shoulder "to force him down," to get "control of him, and also get on the air to let the rest of the units know where [his] location was."

23

Based on this testimony, we conclude that Lilly was making an investigatory stop supported by a reasonable suspicion that appellant had knowledge of the reported drug activity. Given the threat to his safety during appellant's initial flight from the house through his eventual confrontation with appellant in the alley, the officer acted reasonably in using physical force. Lilly did not draw his weapon when appellant turned to face him in the alley; instead, he instructed appellant to get down while simultaneously calling for assistance with one hand and placing the other on appellant's shoulder. Such force was reasonable to ensure the officer's safety and prevent appellant's further flight. *See Elliott*, 417 Md. at 429.

Appellant's use of force to thwart Lilly's lawful *Terry* stop gave Moorer probable cause to arrest appellant. A citizen may not use force to thwart a lawful *Terry* stop. *Hicks v. State*, 189 Md. App. 112, 125 (2009); *Barnhard v. State*, 86 Md. App. 518, 528 (1991), *aff'd on other grounds,* 352 Md. 602 (1992). When appellant punched Moorer in the course of Moorer's attempt to arrest him, appellant resisted a lawful arrest. The evidence was sufficient to convict appellant of resisting arrest.

Because appellant does not contest that his other convictions were supported by sufficient evidence, we shall remand for further proceedings on all counts, including a new trial if appropriate.

## III. Merger

Appellant was sentenced to the following terms of incarceration: six years for disarming a police officer, a consecutive two years for resisting arrest, and another consecutive two years for second degree assault. In his final assignment of error, appellant contends that "[t]he trial court erred by sentencing [appellant] for both the resisting arrest and second degree assault convictions because those offenses merge under the required evidence test."

This complaint stems from an alleged "factual ambiguity in the record as to whether both offenses were predicated upon the same conduct[.]" The ambiguity arises out of the trial court's jury instructions. The court instructed the jury that, in order to find appellant guilty of assault:

> the State must prove that the Defendant caused offensive physical contact to *Jeffrey Lilly*. The contact was the result of an intentional or reckless act of the Defendant, and was not accidental. . . . (Emphasis added.)

With regard to resisting arrest, the court instructed:

> the State must prove one, that *a law enforcement officer* attempted to arrest the Defendant. Two, the Defendant knew that *a law enforcement officer* was attempting to arrest him. Three, that the Defendant intentionally refused to submit to the arrest and resisted the arrest by force, or threat of force. And, four, that the arrest was lawful, that is that *the officer* had probable cause to believe that the Defendant had committed the crime of second degree assault. (Emphasis added.)

As a general rule, convictions for second degree assault of the battery variety and resisting arrest merge when the object of the battery is the arresting officer. *See Nicolas v.*

*State*, 426 Md. 385, 405–06 (2012). When the record is unclear as to the factual basis of the jury's decision, the ambiguity is resolved in favor of the defendant and the convictions merge. *Id.* at 409–10. The jury instructions are ambiguous because the jury could have concluded that Lilly was attempting to arrest appellant. If this were the case, then the convictions would merge. If, on the other hand, the jury concluded that Moorer arrested appellant and that appellant assaulted Lilly, there would be no merger. We believe that an instruction making this distinction would be warranted in the event that this case is retried on remand.

**THE JUDGMENTS OF CONVICTION ARE VACATED. THE CASE IS REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.**